Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| UNIVERSIDAD DE PUERTO RICO<br><br>*Peticionaria*<br><br>v.<br><br>SINDICATO DE TRABAJADORES DE LA UNIVERSIDAD DE PUERTO RICO Y OTROS<br><br>*Recurridos* | TA2026AP00260[1] | Apelación acogida como *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV01900<br><br>Sobre: Impugnación o Confirmación de Laudo |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 8 de mayo de 2026.

Comparece ante nos la Universidad de Puerto Rico (UPR o peticionaria) mediante recurso de *Apelación* el cual acogemos como un *Certiorari* por ser el mecanismo adecuado para la revisión del dictamen recurrido, y solicita la revocación de la *Sentencia*[2] emitida el 28 de enero de 2026[3], por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro recurrido). Mediante el referido dictamen, el TPI confirmó el *Laudo de Arbitraje*[4] emitido el 27 de enero de 2023, por la árbitro designada por el Negociado de Conciliación y Arbitraje (Negociado) del Departamento del Trabajo y Recursos Humanos de Puerto Rico (DTRH) y, en consecuencia, declaró *No Ha Lugar* la *Revisión Judicial de Laudo de Arbitraje Obrero-Patronal*[5] presentada por la UPR.

---

[1] Por motivos de economía procesal, conservamos la designación alfanumérica asignada por la Secretaría de este Tribunal.
[2] Apéndice 6 del recurso de *Certiorari*.
[3] Notificada el 29 de enero de 2026.
[4] Apéndice 8 del recurso de *Certiorari, Parte I*, págs. 2-12.
[5] Apéndice 1 del recurso de *Certiorari*.

Por los fundamentos que expondremos a continuación, **expedimos** el auto de *Certiorari* y **confirmamos** la *Sentencia* apelada.

**I.**

La controversia ante nuestra consideración tuvo su génesis el 21 de julio de 2019, cuando el Sindicato de los Trabajadores de la Universidad de Puerto Rico, en representación del señor Gabriel Chárriez Rivera (en conjunto, recurridos), presentó su querella ante el Decano de Administración del Recinto de Bayamón, en la que solicitó la renovación del contrato del señor Chárriez Rivera[6]. Sin embargo, la UPR no presentó respuesta ante dicha querella.

En vista de lo anterior, el 25 de noviembre de 2019, los recurridos sometieron ante el Negociado una *Solicitud para Designación o Selección de Árbitro*[7]. En dicha solicitud, se hizo una alegación de despido injustificado. Así pues, el 20 de septiembre de 2021, el Negociado emitió la Notificación Núm. 1 mediante la cual pautó vista en el caso A-20-728 para el día 8 de diciembre de 2021[8].

No obstante, el 13 de diciembre de 2021, el Negociado emitió la Notificación Núm. 2 y recalendarizó la vista para el día 1 de marzo de 2022[9]. Llegado el día de la celebración de la vista y previo a ésta, la UPR presentó una *Solicitud de Laudo Sumario y/o para la Desestimación con Perjuicio de la Querella*[10]. En la misma, la peticionaria sostuvo que el empleo del señor Chárriez Rivera era a término definido mediante nombramiento especial. Por ende, no tenía la obligación de mantener al señor Chárriez Rivera a la terminación de la vigencia del contrato de empleo. Además, alegó que no despidió al señor Chárriez Rivera, pues el contrato de empleo

---

[6] Apéndice 8 del recurso de *Certiorari, Parte I*, pág. 9.
[7] *Íd.*, pág. 98.
[8] *Íd.*, pág. 99.
[9] *Íd.*, pág. 97.
[10] *Íd.*, págs. 74-83.

entre ellos expiró por sus propios términos sin ser renovado y que no tenía expectativa de continuidad.

Así las cosas, la Árbitro Yolanda Cotto Rivera (Árbitro Cotto Rivera) suspendió la vista, debido a que el presidente del Sindicato, el señor David Muñoz, no pudo comparecer por razones de enfermedad[11]. Por lo que, les concedió a los recurridos hasta el día de la próxima vista para que se expresaran en torno al petitorio de la UPR[12].

El 24 de marzo de 2022, el Negociado emitió la Notificación Núm. 3 mediante la cual pautó vista para el día 27 de abril de 2022[13]. Sin embargo, la vista pautada para abril no se llevó a cabo por razones personales atribuibles a la Árbitro Cotto Rivera[14]. En vista de lo anterior, el 18 de mayo de 2022, el Negociado emitió la Notificación Núm. 4 y citó vista para el día 16 de agosto de 2022[15]. Llegada la fecha indicada, los recurridos no cumplieron con el término concedido por la Árbitro Cotto Rivera y no se opusieron a la *Solicitud de Laudo Sumario y/o para la Desestimación con Perjuicio de la Querella.*

Así pues, el 16 de agosto de 2022, se celebró la vista de arbitraje. En cuanto a la prueba documental, la misma se conformó de:

Exhibit 1      Convenio Colectivo aplicable (2014-2017).

Exhibit 2      Carta del 26 de mayo de 2019 dirigida al Sr. Chárriez Rivera, suscrita por la Sra. Carina L. Figueroa, Directora de Recursos Humanos.

Exhibit 3      Formulario de Evaluación de Empleados en Nombramiento Parcial Temporero o Especial, correspondiente al Sr. Chárriez Rivera, suscrito por el supervisor Sr. Samuel Sáez Hernández el 6/7/19.

Junto con el alegato escrito se radicaron los siguientes documentos:

---

[11] *Íd.*, pág. 72.
[12] *Íd.*
[13] *Íd.*, pág. 70.
[14] *Íd.*, pág. 68.
[15] *Íd.*, pág. 66.

- Notificación de Nombramiento, fechado 20 de abril de 2016. (Nombramiento);
- Notificación de Nombramiento, fechado 6 de septiembre de 2016. (Cambio)

- Notificación de Cambio y Transacción de Personal, fechada el 30 de junio de 2017. (Renovación) (Nombramiento Especial)

- Notificación de Cambio y Transacción de Personal, fechada el 2 de julio de 2018. (Renovación) (Nombramiento Especial)

- Carta del 1 de febrero de 2018 del Sr. Chárriez Rivera dirigida al Sr. Samuel Sáez Hernández. (Solicitud de Plaza de Conserje)

- Carta del 12 de julio de 2019, suscrita por el presidente del sindicato, Sr. David Muñoz Hernández, dirigida al Sr. Luis Muñoz, Decano de Administración-Recinto de Bayamón, presentando una querella en representación del Sr. Gabriel Chárriez Rivera, solicitando la renovación de su contrato[16].

Asimismo, se enmendó la querella para efectos de clasificación en el Negociado, por no tratarse de un "despido injustificado" como medida disciplinaria, sino de una reclamación por la no renovación de contrato y violación de convenio. Culminada la vista, la Árbitro Cotto Rivera le concedió a la peticionaria hasta el 26 de agosto de 2022 para que sometiera alegato post-vista y prueba adicional.

El 29 de agosto de 2022, los recurridos sometieron un *Memorando*[17] junto a prueba documental[18]. Allí, arguyeron que el señor Chárriez Rivera llevaba más de tres (3) años como empleado temporero de la UPR. Asimismo, adujeron que, de acuerdo con el

---

[16] Apéndice 8 del recurso de *Apelación, Parte I*, págs. 3-4.

[17] *Íd.*, págs. 15-16.

[18] *Íd.*, págs. 17-20. La prueba documental estuvo conformada por diferentes contratos de servicios. Surge de la prueba documental en el caso de autos que el señor Chárriez Rivera trabajó para la UPR mediante un nombramiento temporero asignado al Departamento de Planificación y Planta Física del Recinto de Bayamón de la UPR que se extendió del 20 de abril de 2016 al 30 de junio de 2016. Así también, que el señor Chárriez Rivera trabajó para la UPR mediante un nombramiento especial asignado al Departamento de Planificación y Planta Física del Recinto de Bayamón de la UPR que se extendió del 1 de julio de 2016 al 30 de junio de 2017. De igual forma, que el señor Chárriez Rivera trabajó para la UPR mediante un nombramiento especial asignado al Área de Remodelación y Reparación del Recinto de Bayamón de la UPR que se extendió del 1 de julio de 2017 al 30 de junio de 2018. Así también, que el señor Chárriez Rivera trabajó para la UPR mediante un nombramiento especial asignado al Área de Mantenimiento de Edificios del Recinto de Bayamón de la UPR que se extendió del 1 de julio de 2018 al 30 de junio de 2019.

Artículo 5B (1) del Convenio Colectivo, *infra*, el señor Chárriez Rivera tenía el tiempo suficiente para haber recibido su nombramiento regular debido a que cumplía con todos los requisitos del convenio.

Evaluada la prueba, el 27 de enero de 2023, la Árbitro Cotto Rivera emitió el *Laudo de Arbitraje* y realizó las siguientes determinaciones de hechos:

> El Sr. Gabriel Chárriez Rivera se desempeñó bajo la clasificación de Trabajador en el Recinto de Bayamón como empleado irregular bajo nombramientos expedidos durante los años 2016, 2017, 2018 y 2019.
>
> La efectividad de sus nombramientos fue la siguiente: 20 de abril de 2016 al 30 de junio de 2016; 1 de julio de 2016 al 30 de junio de 2017; 1 de julio de 2017 al 30 de junio de 2018; y 1 de julio de 2018 al 30 de junio de 2019.
>
> El 16 de mayo de 2019, la Directora de Recursos Humanos; del Recinto de Bayamón, le notificó al Sr. Chárriez Rivera que su Nombramiento Especial vencía el 30 de junio de 2019.
>
> Al vencimiento del Nombramiento 2018-2019, este no fue renovado nuevamente.
>
> El 21 de julio de 2019 el presidente del Sindicato, en representación del Sr. Chárriez Rivera, presentó su querella ante el Decano de Administración del Recinto de Bayamón, solicitando la renovación del contrato del Sr. Chárriez Rivera. No consta ninguna respuesta por parte del Patrono ante la presentación de dicha querella.
>
> El 25 de noviembre de 2019, el sindicato radicó la querella del Sr. Chárriez Rivera ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo, alegando un "despido injustificado".

La Árbitro Cotto Rivera determinó que la UPR incurrió en violación de las disposiciones del Artículo 5B (1) del Convenio Colectivo, *infra,* con relación al señor Chárriez Rivera al vencimiento de su nombramiento el 30 de junio de 2019. En consecuencia, ordenó reinstalar al señor Chárriez Rivera en su puesto bajo nombramiento permanente. Además, ordenó el pago de los salarios dejados de percibir.

Inconforme con tal determinación, el 1 de marzo de 2023, la peticionaria sometió ante el TPI una *Revisión Judicial de Laudo de Arbitraje Obrero-Patronal*[19]. En ésta, adujo que el laudo fue emitido

---

[19] Apéndice 1 del recurso de *Certiorari.*

sin que el Negociado hubiese tenido jurisdicción para atenderlo. Ello, por razón de haber estado el campo ocupado por la Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico (PROMESA). Asimismo, arguyó que el laudo se apartaba de lo expresamente pactado entre las partes, y constituía una enmienda impermisible por parte de la Árbitro Cotto Rivera a los términos del contrato de empleo del señor Chárriez Rivera. Esto, debido a que el señor Chárriez Rivera no tenía ninguna expectativa de continuidad en el empleo a la terminación del contrato.

Luego de que el TPI diera oportunidad a los recurridos para oponerse a la petición de la UPR, y sin que estos se expresaran, el 28 de enero de 2026[20], el foro recurrido emitió una *Sentencia*. Mediante el referido dictamen, el TPI confirmó el *Laudo de Arbitraje* y, en consecuencia, declaró *No Ha Lugar* la *Revisión Judicial de Laudo de Arbitraje Obrero-Patronal*.

Insatisfecha, el 13 de febrero de 2026, la peticionaria presentó una *Solicitud de Reconsideración*[21]. Allí reiteraron que el laudo era nulo, toda vez que los procedimientos ante el Negociado violaban las disposiciones de PROMESA, particularmente, en lo concerniente al Plan de Ajuste. De igual manera, arguyeron que la Árbitro Cotto Rivera no debió entrar a dirimir los méritos del caso, sin antes dilucidar la defensa afirmativa de falta de jurisdicción sobre la materia planteada por la UPR. Evaluada tal solicitud, el 18 de febrero de 2026[22], el foro recurrido emitió una *Resolución sobre Reconsideración*[23] en la cual declaró *No Ha Lugar* la reconsideración.

Inconforme aun, el 11 de marzo de 2026, la UPR acudió ante este foro intermedio y le imputó al TPI los siguientes señalamientos de error:

---

[20] Notificada el 29 de enero de 2026.
[21] Apéndice 8 del recurso de *Certiorari*.
[22] Notificada el 19 de febrero de 2026.
[23] Apéndice 9 del recurso de *Certiorari*.

PRIMER ERROR: ERRÓ EL TPI AL NO DESESTIMAR Y REVOCAR EL LAUDO HABIÉNDOSE VIOLADO LAS DISPOSICIONES DE LA LEY FEDERAL "PROMESA"; EL LAUDO ES NULO.

SEGUNDO ERROR: ERRÓ EL TPI AL CONFERIRLE INDEBIDAMENTE DEFERENCIA A LAS DETERMINACIONES DE LA ÁRBITRO YOLANDA COTTO POR CUANTO LAS MISMAS NO SE SOSTIENEN NI EN LA PRUEBA NI EL DERECHO APLICABLE.

TERCER ERROR: ERRÓ EL TPI AL NO RECONOCER QUE LOS PROCEDIMIENTOS, ÓRDENES, RESOLUCIONES Y EL LAUDO EMITIDO EN EL CASO A-20-728 NO SE NOTIFICARON CONFORME A DERECHO; POR LO TANTO EL LAUDO ES NULO.

CUARTO ERROR: ERRÓ EL TPI AL VALIDAR LA INTERPRETACIÓN Y LECTURA CLARAMENTE ERRÓNEA REALIZADA POR LA ÁRBITRO YOLANDA COTTO DE LAS DISPOSICIONES DEL ARTÍCULO 5 DE LAS REGLAS Y CONDICIONES DE TRABAJO SUPLEMENTARIAS A LA REGLAMENTACIÓN VIGENTE PARA EL PERSONAL DE MANTENIMIENTO, CONSTRUCCIÓN Y SERVICIO AGRÍCOLA DE LA UNIVERSIDAD DE PUERTO RICO Y EL SINDICATO DE TRABAJADORES (en adelante, las "Reglas Suplementarias"; EL LAUDO ES NULO POR CUANTO NO SE AJUSTA A LOS HECHOS NI AL DERECHO.

El 13 de marzo de 2026, emitimos y notificamos una *Resolución* en la cual le concedimos a los recurridos hasta el 10 de abril de 2026 para presentar su alegato. Transcurrido en exceso dicho término, resolvemos sin el beneficio de su comparecencia.

**II.**

**-A-**

El auto de *certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[24] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[25]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[26]. Esta norma de deferencia

---

[24] 32 LPRA Ap. V, R. 52.1.
[25] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR __ (2025).
[26] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[27].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[28]. No obstante, la Regla 52.1 de Procedimiento Civil, *supra*, faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[29].
> [...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.

---

[27] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[28] *García v. Padró*, 165 DPR 324, 334-335 (2005*); Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 180 (1992).
[29] 32 LPRA Ap. V, R. 52.1.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**-B-**

Las relaciones obrero-patronales, la negociación colectiva y los procedimientos de arbitraje están vinculadas al desarrollo económico, a la paz industrial y, por ende, a la consecución de los intereses públicos[30]. El arbitraje está considerado como un método alterno a la intervención judicial para la solución de conflictos[31]. En Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral[32]. El arbitraje es un procedimiento de poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican[33].

---

[30] *C.O.P.R. v. S.P.U.*, 181 DPR 299, 319 (2011).
[31] *Íd.*, pág. 362.
[32] *Martínez Rodríguez v. A.E.E.*, 133 DPR 986 (1993).
[33] A. Acevedo Colom, *Legislación protectora del trabajo comentada,* 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393.

Concerniente al proceso de arbitraje, el laudo representa la determinación que toma el árbitro respecto a la controversia laboral[34]. Se ha establecido que el laudo de arbitraje no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos[35]. El contenido del laudo de arbitraje incluye dos elementos principales: 1) la parte sustantiva de derecho en la que se expone la razón de la decisión y, 2) la parte dispositiva en la que se establece el remedio a la disputa. La emisión del laudo termina la función adjudicativa del árbitro[36].

Referente a la revisión judicial de los procesos de arbitraje, nuestro más alto foro ha expresado que, aunque la intervención no esté vedada, ante un convenio de arbitraje lo más prudente es la abstención judicial[37]. Por ello, cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia[38].

Es por esto, que la revisión de los laudos de arbitraje se circunscribe a la determinación de: (1) la existencia de fraude, (2) conducta impropia, (3) falta del debido proceso de ley, (4) violación a la política pública, (5) falta de jurisdicción o, (6) que el laudo no resuelve todos los asuntos en controversia. Las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas[39]. En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de las decisiones administrativas[40]. No obstante, el Tribunal Supremo ha aclarado que la intervención judicial no se justifica por

---

[34] *C.O.P.R. v. S.P.U.*, *supra*, pág. 368.
[35] *Íd.*, pág. 328.
[36] *Íd.*, en las págs. 368-369.
[37] *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133 (1994).
[38] *López v. Destilería Serrallés*, 90 DPR 245 (1964); *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318 (1988).
[39] *Íd.*
[40] *Rivera v. Dir. Adm. Trib.,* 144 DPR 808 (1998); *Condado Plaza v. Asoc. Emp. Casinos P.R.,* 149 DPR 347 (1999); *UCPR v. Triangle Engineering Corp.,* 136 DPR 133 (1994).

una mera discrepancia de criterio con el árbitro ya que se destruiría la esencia de los procesos de arbitraje[41]. Por lo tanto, es la norma que los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas[42]. Es decir, procede la anulación solo si no se ha resuelto la controversia conforme a derecho[43].

**-C-**

En nuestro ordenamiento jurídico, los derechos de los trabajadores a organizarse, a negociar y a llevar a cabo otras actividades concertadas son de rango constitucional. La Sec. 17 de la Carta de Derechos de la Constitución de Puerto Rico[44], establece que los trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación de representantes de su propia y libre selección para promover su bienestar. Además, con el propósito de asegurar estos derechos, la Sec. 18 de la Carta de Derechos[45], otorgó en sus relaciones directas con sus propios patronos el derecho a la huelga, a establecer piquetes y a llevar a cabo otras actividades concertadas legales.

Por otra parte, la Ley Núm. 1 de 20 de enero de 1966, según enmendada, conocida como *Ley de la Universidad de Puerto Rico Ley*[46] (Ley Núm. 1), persigue el propósito de "reorganizar la Universidad de Puerto Rico, reafirmar y robustecer su autonomía y facilitar su continuo crecimiento"[47]. Asimismo, dispone que "[l]a

---

[41] *UGT v. Centro Médico del Turabo*, 202 DPR 917, 928 (2019).
[42] *C.O.P.R. v. S.P.U.*, *supra*, pág. 370.
[43] *Íd.*
[44] Art. II, Sec. 17, Const. PR, LPRA, Tomo 1; *Universidad de Puerto Rico v. Unión Bonafide de Oficiales de Seguridad de la Universidad de Puerto Rico,* 206 DPR 140 (2021).
[45] Art. II, Sec. 18, Const. PR, LPRA, Tomo I.
[46] 18 LPRA sec. 601 nota, *et. seq.*
[47] 18 LPRA sec. 601 nota.

Universidad de Puerto Rico continuará siendo una corporación pública"[48].

En cuanto a las garantías que se le reconocen al personal universitario, el Artículo 15 de la Ley Núm. 1 dispone lo siguiente:

> [...]
>
> (2) Se garantiza la continuidad de todos los derechos adquiridos por todo el personal universitario en virtud de lo dispuesto en la legislación vigente a la fecha de aprobación de esta ley.
>
> (3) Se garantiza la continuidad de las obligaciones contractuales incurridas por el Rector de la Universidad o la administración universitaria actual con los trabajadores y empleados de la planta física en convenios colectivos voluntarios con las organizaciones de dichos trabajadores o empleados[49].

Por su parte, la Ley Núm. 130 de 8 de mayo de 1945, según enmendada, conocida como Ley de Relaciones del Trabajo de Puerto Rico[50] (Ley Núm. 30-1945 o Ley de Relaciones del Trabajo), define organización obrera como sigue:

> (10) Organización obrera. — Significa una organización de cualquier clase o cualquier agencia o comisión de representación de empleados o cualquier grupo de empleados actuando concertadamente o plan en el cual participen los empleados y que exista con el fin, en todo o en parte, de tratar con un patrono con respecto a quejas y agravios, disputas, salarios, tipos de paga, horas de trabajo y/o condiciones de empleo[51].

La Ley Núm. 168 de 29 de septiembre de 2014 enmendó la Ley Núm. 130-1945. Particularmente, dicha enmienda incluyó un cambio al inciso 11 del Art. 2 de la Ley Núm. 130-1945, el define instrumentalidad corporativa como sigue:

> (11) Instrumentalidades corporativas- Significa toda corporación o instrumentalidad pública y sus subsidiarias, e incluirá también las empresas similares que se establezcan en el futuro y sus subsidiarias, y aquellas otras agencias del Gobierno que se dedican o pueden dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario[52].

---

[48] *Íd.*
[49] 18 LPRA sec. 601, nota.
[50] 29 LPRA sec. 62, *et. seq.*
[51] 29 LPRA secc. 63.
[52] 29 LPRA sec. 64(11).

Ante esta enmienda, la jurisprudencia más reciente ha establecido que la UPR es un "patrono" sujeta por ello a la jurisdicción de la Junta de Relaciones del Trabajo de Puerto Rico[53].

**-D-**

La Constitución de Puerto Rico establece que "[l]os trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación de representantes de su propia y libre selección para promover su bienestar"[54]. Así, el convenio colectivo recoge este derecho, siendo definido como un "acuerdo por escrito efectuado entre una organización obrera y un patrono, en el cual se especifican los términos y las condiciones de empleo para los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para resolver las disputas que se susciten durante su vigencia"[55]. Por tanto, "ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas y rechazar otras", pues "[e]l convenio es un contrato y vincula a ambas partes por igual"[56].

El convenio colectivo es un contrato, de manera que tiene fuerza de ley entre las partes suscribientes siempre que no contravenga la ley, la moral y el orden público[57]. Por tal razón, si los términos de un contrato o de una cláusula contractual dentro de un convenio colectivo son suficientemente claros como para entender lo que se pacta, hay que atenerse al sentido literal de las palabras y, por ende, los tribunales no pueden entrar a dirimir sobre lo que

---

[53] *UPR v. Unión Oficiales UPR,* 206 DPR 140, 150 (2021).
[54] Art. II, Sec. 17, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 388-389.
[55] *AAA v. UIA,* 199 DPR 638, 648 (2018) citando a *Cardona Caraballo v. ACT,* 196 DPR 1004, 1012 (2016).
[56] *AAA v. UIA, supra,* págs. 650-651, citando a *San Juan Mercantile Corp. v. J.R.T.,* 104 DPR 86, 89 (1975).
[57] *J.R.T. v. Junta Adm. Muelle Mun. de Ponce,* 122 DPR 318, 333 (1988).

presuntamente intentaron pactar las partes al momento de contratar. En cuanto al arbitraje pactado en los convenios colectivos, la autoridad del árbitro para atender una controversia queda definida por el lenguaje del convenio colectivo o por el acuerdo de sumisión sometido entre las partes[58].

Referente a la controversia que nos ocupa, en el Artículo 5 del Convenio Colectivo que se firmó y acordó entre la UPR y el Sindicato[59], se establece cual es el procedimiento que debe de seguir la UPR a la hora de nombrar a empleados a las plazas regulares. En lo concerniente, el Artículo 5 del Convenio Colectivo dispone lo siguiente:

A. En plazas vacantes

1. Cuando surjan necesidades para cubrir puestos regulares vacantes, cada unidad establecerá un registro de elegibles para cada una de las clases incluidas en la unidad apropiada. De determinarse que existe un margen de selección adecuado, lo cual requiere por lo menos identificar tres candidatos de la unidad concernidas, las convocatorias para dichas clases se establecerán cerradas al sistema universitarios. De no haber suficientes candidatos para completar los tres (3), la unidad certificará los nombres de los disponibles, aun cuando sean menos de tres (3), según la reglamentación al efecto.

2. Cuando exista una plaza regular vacante cuya clasificación esté incluida en la unidad que representa el Sindicato y la administración tenga necesidad de cubrirla, la Oficina de Recursos Humanos de la unidad institucional certificará aquellos candidatos que figuren en el Registro antes mencionado a petición del funcionario del departamento o división donde existe la vacante.

3. El personal de la unidad apropiada que cumpla con los requisitos mínimos de la clase para la cual se incluye en el registro de elegibles correspondiente, tendrá derecho a revisar los criterios utilizados y por los cuales se determinó su turno en dicho Registro, así como los procedimientos establecidos. Durante dicho proceso el empleado podrá estar acompañado por un Oficial de Sindicato.

4. Luego de expedida la Certificación de Elegibles para iniciar el proceso de selección, se remitirá copia de la misma al Sindicato, el cual podrá someter su recomendación debidamente fundamentada a la Oficina de Recursos Humanos dentro de cinco (5) días laborables. Antes de someter su recomendación de selección, el funcionario entrevistador tomará en consideración, en adición a los criterios regulares de selección, las recomendaciones efectuadas por el Sindicato. De requerirse una segunda

---

[58] *U.G.T. v. Corp. Difusión Púb.*, 168 DPR 674, 683 (2006).
[59] Reglas y Condiciones de Trabajo Suplementarias a la Reglamentación vigente para el personal de Mantenimiento, Construcción y Servicio Agrícola de la Universidad de Puerto Rico. (Convenio Colectivo).

certificación de elegibles, el supervisor deberá solicitar por escrito con la debida justificación a la Oficina de Recursos Humanos. Luego de emitida la segunda certificación, se enviará copia al Sindicato de Trabajadores, el cual tendrá cinco (5) días laborables para someter sus recomendaciones debidamente fundamentadas a la Oficina de Recursos Humanos.

5. De no existir suficientes candidatos elegibles para expedir la certificación, la plaza se cubrirá a tenor con la reglamentación universitaria aplicable.

6. Ante la solicitud formal del Presidente del Sindicato de Trabajadores a la autoridad nominadora de una unidad institucional, o a aquel funcionario en quien se haya delegado esta función por dicha autoridad, se permitirá a este Oficial del Sindicato (o en su defecto a un delgado autorizado oficialmente por el Presidente del Sindicato) conocer el registro del personal elegible para cualquiera de las clases comprendidas en la unidad apropiada, una vez éste haya sido cerrado para propósitos de la convocatoria.

7. El sindicato, por conducto de un oficial debidamente autorizado por esa agrupación, solicitará del Director de Recursos Humanos de cada una de las unidades institucionales; que éste le provea una lista de las plazas vacantes, que a este momento existan en su unidad, respecto a las clasificaciones cubiertas por estas Reglas. Esta solicitud se hará dos (2) veces al año a intérvalos de seis (6) meses cada una de ellas.

8. Se eximirá del periodo probatorio a la persona seleccionada para cubrir un puesto vacante si concurren las siguientes circunstancias:

a. que se haya venido desempeñando previo a la selección en funciones correspondientes a la clasificación del puesto a cubrir;
b. que en esas funciones haya prestado servicios como personal irregular por espacio de doce (12) meses o más;
c. que durante tal periodo de tiempo haya recibido evaluaciones no inferiores a la calificación de satisfactorio;
d. que medie una recomendación por su supervisor ante la Autoridad Nominadora de la unidad.

B. <u>En plazas a crearse</u>

1. Los trabajadores que no ocupen plazas, desempeñándose como personal irregular que hayan prestado servicios ininterrumpidos por dos (2) años, que llenen los requisitos para pasar a empleado regular, desempeñando las tareas que venía realizando previamente, recibirán nombramiento permanente.

2. Se seguirá el siguiente procedimiento:

a) Cada empleado irregular tiene que ser evaluado a la terminación del proyecto o transcurrido seis (6) meses de la fecha de inicio de su empleo, el término que sea menor. Copia de la evaluación debe de proveerse al empleado, y su supervisor debe estar disponible para discutir la misma con el empleado y/o su representante. Si vencido el término establecido, la evaluación no ha sido realizada, se entenderá que hay una acción positiva por parte de la Administración Universitaria y que los servicios han sido satisfactorios.

b) Se entenderá que un empleado ha trabajado dos (2) años ininterrumpidos cuando ha trabajado en cada uno de los dos (2) años consecutivos un total de 1,300 horas a tiempo sencillo. Si en un año el empleado trabaja menos de 1,300 horas, el cómputo de los dos (2) años se comienza nuevamente a la fecha de reclutamiento al siguiente año fiscal.

c) Se entenderá que no se interrumpe el servicio cuando el empleado está en disfrute de licencia por enfermedad con paga y licencia de vacaciones con paga.

C. Los empleados cubiertos por estas Reglas que por motivo de cambio de residencia deseen trasladarse a otra unidad institucional, dentro de la misma clase, deberán radicar una solicitud en la unidad en que interesen dicho traslado. Esta solicitud puede ser en forma de carta. La misma no será devuelta por razón de que no existan plazas vacantes o convocatorias en ese momento, sino que será incluida en un acervo especial de traslados entre unidades institucionales que se llevará en cada unidad. Cuando surja una vacante en la misma clase de puesto que el que ocupa el empleado, éste será citado a entrevista. La entrevista es con el propósito de que tenga la oportunidad de ser considerado.

D. La Administración Universitaria solo utilizará los siguientes mecanismos para cubrir los servicios relacionados con los puestos dentro de la unidad apropiada del Sindicato de Trabajadores, conforme a la reglamentación universitaria aplicable, a saber:

1. Nombramiento Probatorio
2. Nombramiento Permanente
3. Nombramiento Temporero
4. Nombramiento Especial
5. Nombramiento Sustituto
6. Nombramiento Irregular- solamente para los empleados a jornal a tarea parcial que laboran en las oficinas regionales y locales del SEA.

**-E-**

La doctrina de campo ocupado surge de la Cláusula de Supremacía de la Constitución de los Estados Unidos, la cual establece que la ley federal tendrá supremacía sobre las leyes estatales cuando la primera no pueda coexistir con un estatuto estatal[60]. En virtud de esta, se evita que surjan conflictos regulatorios entre dos gobiernos, y se fomenta la uniformidad[61]. De conformidad, el Congreso puede ocupar el campo sobre un asunto federal y excluir la regulación local[62]. La jurisdicción exclusiva del Gobierno federal puede surgir cuando expresamente lo haya

---

[60] Art. VI, Const. EE.UU., LPRA Tomo 1. *S.L.G. v. S.L.G.*, 150 DPR 171, 181 182 (2000).
[61] *Mun. de Peñuelas v. Ecosystems, Inc.,* 197 DPR 5, 14 (2016).
[62] *González v. Mayagüez Resort & Casino,* 176 DPR 848, 856 (2009).

dispuesto el Congreso o cuando la intención de la ley de privar de jurisdicción a los tribunales estatales sea clara[63]. Del mismo modo, el campo se ocupa cuando el interés o el propósito federal es tan dominante que no debe existir reglamentación estatal, o, cuando esta podría producir un resultado incompatible con los objetivos federales en determinada área[64].

Por su parte, en junio de 2016 fue aprobada la Ley PROMESA con el propósito de proveer un procedimiento particular de quiebra al gobierno del Estado Libre Asociado de Puerto Rico, así como para la reorganización fiscal del gobierno central[65]. El estatuto creó una Junta de Supervisión Fiscal (Junta), que es considerada una entidad del Gobierno de Puerto Rico y no del gobierno federal[66]. Así pues, la Junta tiene el control exclusivo de asegurar la aprobación y certificación de los planes fiscales del gobierno de Puerto Rico, y puede exigirle que incluya sus recomendaciones en los planes, aun cuando las recomendaciones hayan podido ser rechazadas por la rama legislativa o la ejecutiva[67]. Asimismo, tiene el poder absoluto de hacer las reducciones necesarias en los gastos del gobierno para asegurar que los ingresos y gastos cumplan con su plan fiscal.

Por otro lado, la Ley PROMESA, *supra,* expresamente dispone que sus disposiciones prevalecerán sobre cualquier disposición específica o general de las leyes territoriales, leyes estatales o reglamentos que sean incompatibles con esta ley[68]. De este modo, el Congreso de forma expresa hizo manifiesta su intención de que dicha ley desplazaría cualquier legislación estatal que choque con la Ley PROMESA, *supra.*

---

[63] *Mun. de Peñuelas v. Ecosystems, Inc., supra,* págs. 14-15.
[64] *Íd.*
[65] 48 USCA sec. 2101 *et seq. JMG Investment, Inc. vs. ELA et al.,* 203 DPR 708 (2019).
[66] 48 USC sec. 2121(c)(1).
[67] 48 USC sec. 2141.
[68] 48 USC sec. 2103.

**III.**

En su recurso, la UPR nos solicitó la revisión de la *Sentencia* emitida el 28 de enero de 2026, notificada el 29 de enero de 2026, mediante la cual el TPI confirmó el *Laudo* emitido el 27 de enero de 2023 por la Árbitro Cotto Rivera, designada por el Negociado del DTRH y, en consecuencia, declaró *No Ha Lugar* la *Solicitud de Revisión de Laudo de Arbitraje Obrero-Patronal* presentada por la peticionaria.

La peticionaria arguyó que el TPI incidió al no desestimar ni revocar el laudo arbitral y alegó que este era nulo por violar las disposiciones de la Ley PROMESA. Asimismo, argumentó que el foro recurrido le dio deferencia a las determinaciones de la Árbitro Cotto Rivera, las cuales no estaban sustentadas con prueba ni con el derecho aplicable. De igual forma, planteó que el laudo era nulo por falta de notificación adecuada de los procedimientos, en violación al debido proceso de ley. Finalmente, sostuvo que el TPI validó erróneamente la interpretación del Artículo 5 de las Reglas Suplementarias, *supra*, realizada por la Árbitro Cotto Rivera, ya que el laudo no se ajustaba a los hechos ni al derecho.

Tras examinar detenidamente la totalidad del expediente ante nuestra consideración y haber analizado los argumentos de la parte peticionaria, concluimos que procede confirmar la *Sentencia* impugnada. Somos del criterio que ni la Árbitro Cotto Rivera ni el foro recurrido abusaron de su discreción. Veamos.

En apretada síntesis, en su primer señalamiento de error, la UPR arguyó que el Negociado carecía de jurisdicción para atender el recurso debido a que el campo estaba ocupado por la Ley PROMESA, *supra*. Si bien es cierto que el mencionado estatuto impide cualquier desembolso de fondos públicos que opere en contravención con las limitaciones fiscales que el estatuto implementa, ello no tiene el efecto de anular la totalidad de los convenios colectivos. Fíjese que

nuestro Tribunal Supremo ha resuelto que según la *"Stipulation Between the Commonwealth of Puerto Rico and CBA Counterparties Regarding Certain Grievance and Arbitration Procedures"* se reconoce una tercera categoría de pleitos que no están paralizados al amparo del Título III de PROMESA. Tal es el caso de los pleitos sobre quejas, agravios y arbitrajes al amparo de los convenios colectivos suscritos entre el Gobierno de Puerto Rico y las uniones sindicales, donde el remedio solicitado consista en la reinstalación del empleado unionado a su puesto[69]. Por ende, un árbitro del Negociado no incurre en violación de las disposiciones de la Ley PROMESA, *supra*, al ejercer su función de resolver un asunto que le ha sido sometido y determinar conforme a lo pactado entre las partes y conforme a derecho. Por ello, colegimos que la árbitro Cotto Rivera no erró al atender el recurso presentado por los recurridos.

En el segundo señalamiento de error, la peticionaria planteó que la Árbitro Cotto Rivera incidió al determinar que ésta tenía la obligación de restituir al señor Chárriez Rivera en su empleo bajo un nombramiento permanente y pagarle los salarios y haberes dejados de percibir, en contravención a la política pública fijada por la Ley PROMESA, *supra*. No le asiste la razón, veamos. En primera instancia, la peticionaria no presentó evidencia suficiente para demostrarnos cómo el laudo contravino con el estatuto antes mencionado. Además, no surge del expediente que la Junta hubiese ordenado la eliminación del Convenio Colectivo entre las partes. En el caso de marras, es evidente que la Árbitro Cotto Rivera se limitó a emitir la determinación sobre si la UPR incumplió con el Convenio Colectivo, al no nombrar al señor Chárriez Rivera a un puesto regular de empleo. Al determinar que se incumplió, ordenó la reinstalación a un puesto bajo nombramiento permanente y el pago

---

[69] *Depto. de Hacienda v COTIARI,* 203 DPR 1031, 1059-1060 (2020).

de salarios y haberes dejados de percibir. El mero hecho de que la determinación arbitral tuviera una consecuencia económica para la peticionaria, no implicaba que el laudo fuera contrario a la Ley PROMESA, más aún cuando este caso cae en la categoría II permitida en la mencionada estipulación[70].

En cuanto al tercer señalamiento de error, la UPR esgrimió que no fue notificada de la vista celebrada el 16 de agosto de 2022, ni del laudo emitido por la Árbitro Cotto Rivera el 27 de enero de 2023, por lo que dicho dictamen era nulo. En cuanto a la citación de la vista, luego de evaluar el expediente ante nuestra consideración, debemos puntualizar que, contrario a lo que alega la UPR, existe una incongruencia e inconsistencia en la dirección electrónica provista por la peticionaria. Fíjese que, en la *Moción para asumir la representación legal del patrono querellado*[71], solicitó que se le permitiera asumir la representación legal de la UPR y en lo sucesivo se le notificara cualquier orden o documento relacionado con este caso; a tales fines, proveyó la siguiente dirección postal: PO Box 364966, San Juan, Puerto Rico 00936-4966 y la dirección electrónica ehernandez@cnr.law. Nuevamente, en la *Solicitud de Laudo Sumario y/o para la Desestimación con Perjuicio de la Querella*[72] notificó la misma dirección electrónica. Sin embargo, el 25 de abril de 2022, a las 2:50pm, Damaris Rodríguez Cabán, técnica de Sistema de Oficina III del NAC (técnica de Sistema de Oficina III del NAC), envió un correo electrónico[73] al representante de la UPR e_hernandez@cnr.law y al representante del sindicato jorgeluismarchand@gmail.com para notificar la suspensión de la vista del 27 de abril de 2022. Asimismo, a las 3:22pm la técnica de

---

[70] *Depto. de Hacienda v COTIARI, supra*, 1061-1062.
[71] Entrada núm. 4 del expediente del Tribunal de Apelaciones (TA), *Anejo Expediente Administrativo Parte III*, págs. 32-33.
[72] *Íd.*, págs. 4-13.
[73] Entrada núm. 4 del expediente del TA, *Anejo Expediente Administrativo Parte II*, pág. 23.

Sistema de Oficina III del NAC notificó por correo electrónico[74] a Víctor Rivera Rodríguez (v.rivera@pr.edu) de la suspensión de la vista. Ese mismo día, minutos después, el representante de la UPR e_hernandez@cnr.law envió un correo electrónico[75] a la técnica de Sistema de Oficina III del NAC agradeciendo la notificación. Asimismo, informó que estaba remitiendo dicha notificación a su cliente, con dos nuevas direcciones electrónicas. Posterior a esto, el 27 de enero de 2023, la técnica de Sistema de Oficina III del NAC notificó el Laudo de Arbitraje[76] al representante legal de la UPR al mismo correo electrónico e_hernandez@cnr.law.

De tales hechos procesales surge que, tal como lo determinó el foro de instancia, no se presentó prueba alguna de que la peticionaria no haya sido debidamente notificada. Referente a la notificación del laudo, apuntalamos que, según la prueba presentada[77], el mismo se le notificó al Lcdo. Ricardo Goytía Díaz, representante legal del Sindicato, al Sr. David Muñoz Hernández, Presidente del Sindicato, al Sr. Víctor Rivera Rodríguez, Director Interino de Recursos Humanos de la UPR, y al Lcdo. Edgar Hernández Sánchez, representante legal de la peticionaria. Esbozado lo anterior y sin prueba en contrario, determinamos que el error señalado no quedó demostrado.

Por último, en el cuarto señalamiento de error, la peticionaria sostuvo que la Árbitro Cotto Rivera se extralimitó en su autoridad. Esto, debido a que, alegadamente, el señor Chárriez Rivera no fue despedido, sino que, su contrato de empleo a término expiró por sus propios términos conforme a lo convenido, y que ésta no estaba obligada a extenderle un nuevo contrato. Como adelantamos en la exposición del derecho, el Artículo 5 (B) (1) del Convenio Colectivo,

---

[74] *Íd.*, pág. 24.
[75] *Íd.*, pág. 22.
[76] *Íd.*, pág. 9.
[77] Apéndice 1 del recurso de *Certiorari*, *Apéndice A*, págs. 10-11.

dispone que los trabajadores que se desempeñen como personal irregular y que hayan prestado servicios ininterrumpidos por dos (2) años y que llenen los requisitos para pasar a empleado regular recibirían un nombramiento permanente. En cuanto al procedimiento, el Artículo 5.B(2) del Convenio Colectivo establece que sería elegible para dicho beneficio un empleado que haya trabajado dos (2) años ininterrumpidos cuando ha trabajado en cada uno de los dos (2) años consecutivos un total de mil trescientas (1,300 horas) a tiempo sencillo. Asimismo, el mencionado inciso dispone que cada empleado irregular tenía que ser evaluado transcurrido seis (6) meses de la fecha de inicio de su empleo o finalizado el proyecto, el que fuera menor, y que si vencido el término establecido, la evaluación no ha sido realizada, se entenderá que hay una acción positiva por parte de la Administración Universitaria y que los servicios han sido satisfactorios.

Evaluada la totalidad del expediente, concluimos que el señor Chárriez Rivera tenía suficiente tiempo trabajando para la UPR para recibir el nombramiento regular que le correspondía, ya que cumplía con todos los requisitos dispuestos en el convenio. Así pues, somos de la opinión que la Árbitro Cotto Rivera no insidió al determinar que la peticionaria incurrió en violación del Artículo 5.B del Convenio Colectivo, *supra*.

Finalmente, es menester enfatizar que, la decisión tomada tanto por la Árbitro Cotto Rivera como por el TPI no fue contraria a derecho ni fue tomada con prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones